**PEOPLES HERITAGE BANK**

v.

**CITY OF SACO.**

Supreme Judicial Court of Maine.

Argued May 6, 1987.

Decided July 1, 1987.

Robert Checkoway (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for plaintiff.

Robert W. Bower, Norman, Hanson & Detroy, Portland, for Ronald E. Ayotte, Sr., amicus curiae.

Erland B. Hardy (orally), Woodman & Edmands, Biddeford, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS,[*] WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

The City of Saco (Saco) appeals from a summary judgment entered by the Superior Court, Cumberland County, for the Peoples Heritage Bank (Bank) holding Saco liable to the Bank on its agreement to guarantee a loan made by the Bank to U.S. Peat, Inc. (U.S. Peat). Because the record reveals that there exists a genuine issue of material fact as to authority of Saco to guarantee the loan by the Bank to U.S. Peat, we vacate the judgment.

The Bank sued Saco on a loan guaranty agreement that unconditionally obligated Saco to repay the Bank's loan to U.S. Peat. In response to a request for admissions Saco admitted that it had made no payments on the loan, but opposed the Bank's motion for summary judgment on the ground that it lacked authority to enter into the loan guaranty agreement. The court accepted the Bank's argument that 30 M.R.S.A. § 5153 (Supp.1986) authorized Saco's actions and entered summary judgment for the Bank.[1] Section 5153 permits municipalities that have contracted for and accepted an offer of federal aid to incur debt in anticipation of receiving the funds.[2]

---

[*] Roberts, J., sat at oral argument and participated in the initial conferences, but did not participate in the final decision.

[1] Summary judgment was also entered against U.S. Peat, Inc. and Raymond Contarino who had executed the promissory note to the Bank. They do not appeal.

[2] 30 M.R.S.A. § 5153 provides:

The municipal officers of any municipality may contract for and accept an offer or a grant of federal or state aid, or both, for any purpose for which a municipality may raise or expend money. The municipal officers of any plantation organized prior to November 1, 1977, may contract for and accept an offer or a grant of federal or state aid, or both, for any purpose for which the plantation is authorized to raise or expend money. Notwithstanding any provisions in a charter or special Act of the Legislature, but subject to the constitutional limit on indebtedness, any plantation organized prior to November 1, 1977 or municipality *which has contracted for and accepted an offer or a grant of federal or state aid or both, for a particular project, may by vote of its municipal officers incur indebtedness in anticipation of the receipt of such aid for the particular project by issuing its general obligation notes payable in not more than one year,* which notes may be renewed from time to time by the issue of other notes, provided

On appeal Saco asserts, *inter alia*, that summary judgment was precluded by a genuine issue as to the material fact of whether at the time of the loan guaranty, Saco had contracted for and accepted an offer of federal aid as required by section 5153.

The party seeking the summary judgment has the burden of demonstrating clearly that there is no genuine issue as to any material fact and he is entitled to judgment as a matter of law. *Magno v. Town of Freeport*, 486 A.2d 137, 141 (Me.1985). In reviewing the grant of a motion for summary judgment we view the evidence in the light most favorable to the party against whom the motion has been granted, according that party the full benefit of all favorable inferences that may be drawn from the evidence. *Lidstone v. Green*, 469 A.2d 843, 845 (Me.1983). Applying this rule, we examine the record to determine whether it supports the Superior Court's conclusion that there was no genuine issue as to any material fact and that the Bank was entitled to a judgment as a matter of law. *See* M.R.Civ.P. 56(c).

As established by the record in this case, the facts relevant to the material issue of whether Saco had contracted for and accepted federal aid are as follows: Sometime prior to 1983 Saco applied to the United States Department of Housing and Urban Development (HUD) seeking an Urban Development Action Grant (UDAG) to help Saco develop an industrial park. U.S. Peat was to be one of four private participants in the project. In December, 1982, U.S. Peat undertook to buy buildings in the industrial park and equipment with which to begin a peat mining operation. For its part in the project Saco planned, *inter alia*, to improve rail access to the industrial park and to make a low interest loan to U.S. Peat for equipment purchases using $180,000 of the UDAG funds.

HUD preliminarily approved a $1,290,000 grant for the project, including the $180,000 loan to U.S. Peat, on February 3, 1983. On June 3, 1983 HUD sent Saco a 39–page "UDAG GRANT AGREEMENT" signed by a HUD official. According to the agreement's terms, it constituted an offer that Saco could accept by signing and dating the document.

While awaiting the loan of UDAG funds from Saco, U.S. Peat sought an interim loan with which to buy equipment. In early June of 1983 the Bank agreed to loan U.S. Peat $180,000 for 120 days if Saco would guarantee repayment of the loan. The Saco City Council voted on June 16, 1983 to guarantee the loan, and the promissory note and guaranty agreements were executed on June 27, 1983.

Within a month U.S. Peat withdrew from the UDAG project. U.S. Peat subsequently went out of business and defaulted on the loan. Thereafter, Saco, the Bank, and U.S. Peat entered into an agreement to waive the default and extend the loan repayment for 60 days. When the Bank did not receive payment from U.S. Peat or Saco, this suit was instituted.

The affidavits and attached documents establish that prior to the June 27, 1983 loan guaranty Saco received an offer of a UDAG grant in the form of preliminary

that no notes shall be issued or renewed in any amount which at the time of such issuance or renewal exceeds the unpaid amount of the federal or state aid in anticipation of which such notes are issued or renewed, as the case may be. To any extent that the federal or state aid in anticipation of which the notes were issued when received exceeds the amount of such aid remaining to be paid under contract or accepted offer, plus the amount of any outstanding notes issued in anticipation thereof, it shall be kept in a separate account and used solely for the payment of such outstanding notes. Any provision of a charter of a city or town requiring the publication of an ordinance, vote, order or resolution of the municipal officers, the holding of a public hearing thereon or subjecting such ordinance, vote, order or resolution to a referendum shall not apply to any borrowing authorized under this section.

In addition, the municipal officers of any plantation organized prior to November 1, 1977 or municipality may borrow in anticipation of any funds or reimbursements that the Legislature has authorized to be paid to plantations organized prior to November 1, 1977 or municipalities for education purposes during the municipal year. The notes shall be paid from those funds received for educational purposes from state agencies during the municipal year. (Emphasis added).

approval and the UDAG Grant Agreement executed by HUD. There is nothing in the record to establish when Saco accepted the agreement by signing and dating it. The copy of the agreement filed in the Superior Court, attached to the affidavit of the Bank's vice president, has not been signed by a Saco official. The record before the Superior Court does not establish when, and in what form, the UDAG agreement was accepted by Saco. The affidavit of the then City Solicitor of Saco declares only that Saco ultimately "did receive the vast majority of this grant money" from HUD.

Because there exists a genuine issue as to the material fact of Saco's authority to guarantee the loan by the Bank to U.S. Peat, the trial court improperly granted summary judgment to the Bank. *See* M.R. Civ.P. 56(c).

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.