**Mustafa V. ONAT**

v.

**PENOBSCOT BAY MEDICAL CENTER, et al.**

Supreme Judicial Court of Maine.

Argued March 20, 1990.

Decided May 4, 1990.

Donna L. Zeegers (orally), Kennedy Brook Business Center, Augusta, for plaintiff.

Phillip E. Johnson (orally), Malcolm Lyons, Michael Seitzinger, Kristin A. Gustafson, John Nivison, Pierce, Atwood,

Scribner, Allen, Smith & Lancaster, Augusta, William D. Robitzek (orally), Paul F. Macri, Berman, Simmons & Goldberg, Lewiston, for defendants.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

GLASSMAN, Justice.

Mustafa V. Onat, M.D., appeals from a summary judgment entered in favor of the defendants on an order of the Superior Court (Knox County, *Smith, J.*) in Onat's consolidated actions against Penobscot Bay Medical Center ("the hospital") and some of its employees and affiliated physicians [1] who, as participants in the hospital's peer review process, voted to suspend Onat's staff privileges because of concerns about his standards of medical practice. Onat contends that the court erred because issues of material fact remain on all of his claims.[2] In reviewing the extensive record in this case, we find that Onat failed to present probative evidence to the trial court that there were any genuine issues of material facts to be resolved by the trier of fact, and affirm the grant of the defendants' motion for a summary judgment. Accordingly, we do not reach the defendants' cross-appeal on the question of qualified versus absolute immunity under 24 M.R.S.A. § 2511 (1985) or 32 M.R.S.A. § 3293 (1975).

Mustafa Onat has been an anesthesiologist on the hospital's medical staff since at least 1975. In March 1983 concerns raised by physicians and nurses about Onat's standard of patient care culminated in a request to the hospital's Credentials and Peer Review Committee for monitoring Onat.[3] The monitoring revealed problems with Onat's patient care and led to an extended process of peer review, including review of the entire anesthesiology department by an outside consultant. Onat participated in the review process with the assistance of counsel and during the process filed three actions against the defendants.[4] In November 1985, after the review process had been completed pursuant to the hospital bylaws, the hospital's trustees voted to take corrective action against Onat by making his clinical privileges provisional, requiring monitoring of his cases

1. In two separate actions Onat sued Penobscot Bay Medical Center; the hospital's Chief Executive Officer Jerry S. Koontz; the hospital's Vice President of Corporate Management Information Services Carole L. Esley; chief operating room nurse M. Evelyn Blaney, R.N.; Donald Weaver, M.D.; the American Society of Anesthesiology ("ASA"); Bucknam McPeek, M.D., an anesthesiologist at Massachusetts General Hospital, professor at Harvard Medical School, and designated representative of the ASA; Stephen Ross, M.D.; John Meyer, M.D.; Paul Killoran, M.D.; William Nuesse, M.D.; and Theodore Schettler, M.D. The last five defendants are licensed physicians who served on the hospital's Medical Staff Executive Committee during the events giving rise to Onat's suits. The parties have stipulated to the dismissal of Donald Weaver, M.D.

2. We note at the outset that Onat has failed to comply with M.R.Civ.P. 75A(a)(4), requiring that the argument section of an appellant's brief on appeal to this Court "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities and particular pages of the record relied on." In his brief, Onat has simply restated his allegations without substantiation or citation to the particular pages of the record he relies upon as evidence of material fact. Although we have not previously invoked this rule in considering or refusing to consider an appellant's arguments to this court, we note that the federal circuit courts using the analogous federal rule of appellate procedure, Fed.R. App.P. 28(a)(3) and (e), have under similar situations refused to consider arguments unsupported by record citations, especially on an appeal of a summary judgment order entered in favor of the appellees. *See, e.g., Mendez v. Belton,* 739 F.2d 15, 18 (1st Cir.1984).

3. The Joint Commission of Accreditation of Hospitals (JCAH) requires on-going review of medical staff practice and performance and further requires a hospital's medical staff to police itself in establishing and using mechanisms for peer review.

4. Onat filed two actions against the defendants in September 1985, the first for release of an Executive Committee report recommending corrective action against him, the second for his current tort claims. Onat filed a third action in March 1986 for declaratory and injunctive relief from suspension of his staff privileges. At the first hearing on defendants' motion for summary judgment, the court (*Brody, C.J.*) dismissed Onat's first action because Onat had since received the report.

by an outside anesthesiologist, and requiring the chief of the department to report regularly to the Credentials and Peer Review Committee on Onat's patient care. In February 1986, however, a case raising renewed concerns about Onat's patient care resulted in suspension of Onat's staff privileges pending completion of the hospital hearing process on the complaint.[5]

Onat has claimed damages based on the defendants' alleged defamation; conspiracy; intentional infliction of emotional distress; breach of contract; tortious interference with contractual and business relationships; antitrust, conspiracy and restraint of trade; violation of his state and federal constitutional rights to due process and equal protection; violation of his state and federal civil rights; and negligence. The trial court (*Brody, C.J.*) denied the defendants' initial motion for summary judgment, without prejudice to its renewal after completion of discovery, on the grounds that the possibility of malice within the peer review process and the possibility of constitutional and civil rights violations remained unexplored. Following the completion of discovery, the trial court granted the defendants' renewed motion for summary judgment on all of Onat's claims.

On appeal of this granted motion for summary judgment, we examine the record, viewing the evidence in the light most favorable to Onat, to determine whether the trial court properly held that the defendants have established that there exists no genuine issue of material fact and that they are entitled to judgment as a matter of law. *See Philbrook v. Gates Formed–Fibre Products*, 536 A.2d 1118, 1119 (Me.1988); *Peoples Heritage Bank v. City of Saco*, 527 A.2d 320, 321 (Me.1987); M.R.Civ.P. 56(c). Onat cannot survive the motion on the basis of allegations alone, but "must respond by affidavits or otherwise as provided in this rule, setting forth specific facts showing that there is a genuine issue for trial." *See* M.R.Civ.P. 56(e).

■ Onat's claims of defamation, conspiracy, intentional infliction of emotional distress, breach of contract, and tortious interference with contractual and business relationships arose from the defendants' participation in the hospital's peer review process, to which Onat voluntarily subjected himself when he accepted staff privileges at the hospital. Onat does not challenge that this acceptance included conditional immunity for the defendants' conduct of the peer review process. *See Gautschi v. Maisel*, 565 A.2d 1009, 1011 (Me.1989); *Saunders v. VanPelt*, 497 A.2d 1121, 1124–25 (Me.1985); *Restatement (Second) of Torts* § 595 comments d, e, and j; § 596 comment c (1977). This conditional privilege immunizes publication of Onat's alleged shortcomings from legal claims absent abuse of this privilege through express or implied malice. *See Saunders v. VanPelt*, 497 A.2d at 1125; *Restatement (Second) of Torts* § 593.

We have defined malice as either actual malice, *i.e.*, ill will, *see Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me.1985), or implied malice, *i.e.*, reckless disregard for the truth or falsity of the slanderous element of a statement, *see Gautschi v. Maisel*, 565 A.2d at 1011; *Saunders v. VanPelt*, 497 A.2d at 1124–25; *Restatement (Second) of Torts* § 600 comment b ("Reckless disregard as to truth or falsity exists when there is a high degree of awareness of probable falsity or serious doubt as to the truth of the statement"). Despite Onat's numerous allegations of actual and implied malice, there is simply no evidence in the record supporting these allegations with fact. Professional disagreement over the appropriate standard of care does not *per se* constitute malice, either express or implied. Faced with like claims in a similar factual situation, the First Circuit noted in *Mendez v. Belton*, 739 F.2d 15 (1st Cir. 1984):

Although we are reluctant to affirm grants of summary judgment to defendants in cases that hinge on the subjective intent of defendants, a plaintiff opposing a motion for summary judgment

5. The hospital hearing process had not been completed when the summary judgment mo-

tions were heard, either in September 1986 or in October 1987.

must present sufficient probative evidence to convince the court that genuine, material factual issues remain to be resolved by the trier of fact.

739 F.2d at 20 (citation omitted). Because Onat has failed to identify a factual basis on which the court could find either actual or implied malice, the trial court properly granted summary judgment on these claims.

■ In a similar vein, Onat has not put forth any factual evidence that the defendants in this case possessed the specific intent to monopolize necessary to substantiate claims of monopolization, attempt to monopolize, and conspiracy to monopolize under either the state antitrust statute, 10 M.R.S.A. § 1102 (1980), or the federal Sherman Act, 15 U.S.C. § 2. *See* 3 Von Kalinowski, *Antitrust Laws and Trade Regulation* §§ 8.01(4); 9.01(4) (1989). Other than Onat's bare allegations that the defendants' participation in the peer review process constituted monopolistic behavior because the defendants acted with others and because the review resulted in suspension of his medical practice, we find the record devoid of evidence that the defendants possessed the requisite specific intent to monopolize or act collusively to restrain trade, and find summary judgment appropriate on Onat's antitrust and restraint of trade claims.

■ Onat further contends that the defendants' actions deprived him of his rights under the Federal Civil Rights Act, 42 U.S.C. §§ 1981, 1983, and of due process and equal protection under the federal and state Constitutions. The record reveals no discriminatory classification of medical personnel administering patient care that would fall within the purview of the peer review process; by its terms the same process applied to all physicians accepting staff privileges at the hospital. Onat has offered no evidence of discriminatory application of the process. *See Brann v. State*, 424 A.2d 699, 703 (Me.1981). Nor does the record disclose a factual basis on which Onat can make the necessary threshold showing that the defendants were state actors or that they acted under the color of

state law. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936–37, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982); *Penobscot Area Housing Development Corp. v. City of Brewer*, 434 A.2d 14, 24–25 (Me. 1981).

In *Mendez v. Belton*, the First Circuit considered like claims of a physician against a hospital, its administrators, and affiliated physicians for violation of the physician's civil rights in the hospital's suspension of staff privileges because of concerns about the physician's patient care. Finding that the plaintiff-physician had failed to state a cause of action under section 1983, the court ruled that:

> The statute does not reach private action, but rather "prohibits interference with federal rights under color of state law." Where nominally private defendants, such as the hospital and its officers and doctors, are sued under § 1983 and the Fourteenth Amendment, the court must determine whether "the alleged infringement of federal rights [may be] 'fairly attributable to the State.'"

739 F.2d at 17 (citations omitted). In the case at bar, the only evidence on this issue is the affidavit of Jerry Koontz, Chief Executive Officer of the hospital. He averred that the hospital is a private, non-profit Maine corporation and a subsidiary of Northeast Health, also a Maine corporation. Koontz further averred that both of these corporations are managed by privately-selected boards of directors and that the corporations own the hospital property and privately distribute profits. Although the hospital has in the past received Hill–Burton funds and currently receives funds under both the Medicare and Medicaid programs, there is nothing beyond broadly-based government regulation linking the State with this corporation. The evidence in this record does not support a finding that the hospital or its employees were state actors for the purposes of Onat's claims, and summary judgment as to these claims was appropriate. *See Mendez v. Belton*, 739 F.2d at 17–18; *Loh–Seng Yo v. Cibola General Hospital*, 706 F.2d 306, 307–08 (10th Cir.1983); *Modaber v. Cul-*

*peper Memorial Hospital,* 674 F.2d 1023, 1025–26 (4th Cir.1982). *See also* Annotation, *Action of Private Hospitals As State Action Under 42 U.S.C.S. § 1983 or Fourteenth Amendment,* 42 A.L.R.Fed. 463 (1979). Because there was no state action involved in the suspension of Onat's staff privileges, we do not consider his contentions that the defendants' actions deprived him of due process and equal protection under the federal and state Constitutions. *See Hottentott v. Mid–Maine Medical Center,* 549 A.2d 365 (Me.1988); *Bello v. South Shore Hospital,* 384 Mass. 770, 429 N.E.2d 1011 (Mass.1981).

Finally, we find no factual basis for Onat's claim of negligence in the conduct of the evaluation of the hospital's anesthesiology department by the American Society of Anesthesiologists or Bucknam McPeek, M.D., its designated representative.

The entry is:

Judgment affirmed.

All concurring.